IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00423-EWN-BNB

ANTHONY RAY SANCHEZ,

Applicant,

v.

JAMES E. ABBOTT, Warden, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the **Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Anthony Ray Sanchez (the "petitioner") on April 25, 2005.  The respondents filed an Answer on August 12, 2005.  For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b)(1).

The exhaustion doctrine requires that the bases underlying petitioner's federal habeas corpus claim be fairly presented to the state court before a federal court will examine them.  Picard v. Connor, 404 U.S. 270, 275 (1971).  Fair presentation requires that the petitioner's

allegations and supporting evidence offer the state court a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim.  Id. at 277.

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued.  Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997).  The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court.  Id.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. 722,

2

750 (1991).  The determination of cause, prejudice, and fundamental miscarriage of justice are

matters of federal law.  Demarest, 130 F.3d at 941.

## II.  BACKGROUND

The background facts of this case are described by the Colorado Court of Appeals as

follows:

> Defendant, Anthony R. Sanchez, appeals from the judgment of conviction of vehicular homicide, vehicular assault, driving under the influence of alcohol, driving while revocation prohibited, and other traffic-related offenses.  We affirm.
>
> In May 1999, defendant, after consuming several alcoholic beverages at a bar, drove his van north on Highway 85 in Douglas County toward another bar.  He turned left in front of two motorcycles ridden by Douglas County Sheriff's deputies, causing both to collide with his van.  One deputy died from injuries sustained in the accident, and the other was seriously injured.
>
> After an initial investigation at the scene, defendant was arrested, and a test of his blood revealed a blood alcohol level in excess of .100.  Defendant was charged with the offenses described above and with habitual criminal counts.
>
> After his conviction, defendant was sentenced to a total of fifty-four years in prison.  Later, the court ordered the payment of $268,140.74 in restitution.  Defendant appeals asserting numerous claims of error made by the trial court.

*Answer*, Exhibit C, p. 1.

The Colorado Court of Appeals affirmed the judgment of conviction.  Id. at p. 23.  The

petitioner filed a Petition for Writ of Certiorari, which was denied on November 30, 2004.  Id. at

Exhibit E.

The petitioner filed his Application on April 25, 2005.  The respondents concede that the

Application is timely.  The Application asserts the following claims:

(1)   the trial court erred in denying the petitioner's motion for a change of venue;

(2)   the trial court erred in finding that the petitioner waived his physician-patient privilege and in admitting into evidence statements he made to his physician;

(3)   the trial court erred in denying the petitioner's motion to suppress statements that were made to the police without the benefit of a <u>Miranda</u> warning;

(4)   the prosecution did not prove the habitual criminal counts beyond a reasonable doubt; the petitioner's trial counsel was ineffective for allowing the petitioner to be sentenced as a career offender and for failing to strike jurors "who apparently were related to the prosecutor's team";

(5)   the trial court erred by allowing a Colorado State Trooper to testify as an expert in accident reconstruction, and trial counsel was ineffective for failing to prevent the testimony;

(6)   the petitioner's right to testify was impermissibly chilled because of threats made by law enforcement officers;

(7)   the trial court erred in denying a motion for a continuance, and the sentencing procedure was unconstitutional;

(8)   the prosecution committed misconduct during the closing argument, and trial counsel's performance was deficient; and

(9)   the restitution order imposed on the petitioner was improper because the prosecution did not seek restitution at the time of sentencing.

On March 13, 2006, I issued an Order to Show Cause wherein I noted that the petitioner had not presented to the state court the portions of Claims Four, Five, and Eight which allege ineffective assistance of counsel and the part of Claim Seven which alleges that the petitioner's sentencing procedure was unconstitutional.  I further noted that the petitioner was not barred

4

from asserting these claims in a post-conviction motion.  Based on the record, it appeared that no good cause existed for the petitioner's failure to exhaust these claims and therefore, it appeared that the petitioner was not entitled to a stay of his Application in order to exhaust these claims in the state courts.  Consequently, I ordered that plaintiff to show cause why his Application should not be dismissed without prejudice for failure to exhaust his state remedies as to these claims. Because dismissal of the Application would cause the petitioner to exceed the AEDPA's one year statute of limitations, I directed the petitioner that he could, in the alternative, withdraw his claims for ineffective assistance of counsel and his claim regarding unconstitutional sentencing procedures as asserted in Claims Four, Five, Seven, and Eight and proceed on the remaining claims.

The petitioner responded to the Order to Show Cause on March 28, 2006.  He states that his "only alternative is to withdraw the above four claims in order that he may not exceed the AEDPA's one year statute of limitations." *Response to Order to Show Cause*, p. 1.  However, the petitioner does not need to withdraw Claims Four, Five, Seven, and Eight in their entirety to avoid running afoul of the statute of limitations; he need only withdraw the portions of Claims Four, Five, and Eight which allege ineffective assistance of counsel and the part of Claim Seven which alleges that the petitioner's sentencing procedure was unconstitutional.  Therefore, in order to accomplish substantial justice, I liberally construe the petitioner's response as withdrawing only his claims for ineffective assistance of counsel and his claim regarding unconstitutional sentencing procedures as asserted in Claims Four, Five, Seven, and Eight.  The remainder of Claims Four, Five, Seven, and Eight remain at issue in this matter.

## III.  ANALYSIS

The respondents assert that the petitioner has not exhausted any of his claims in the state courts. *Answer*, p. 7. "Although all nine claims were raised in Sanchez' direct appeal and in his petition for certiorari review in the Colorado Supreme Court, none of the claims were raised as federal constitutional claims." Id. at pp. 7-8.

## A. Claims One, Four, Five, Eight, and Nine

Claim One asserts that the trial court erred in denying the petitioner's motion for a change of venue. *Application*, eighth consecutive page. Claim Four alleges that the prosecution did not prove the habitual criminal counts beyond a reasonable doubt. Id. at tenth consecutive page. Claim Five alleges that the trial court committed reversible error when it permitted Trooper Adrian Driscoll to testify as an expert in accident reconstruction. Id. Claim Eight asserts that "as a result of prosecutorial misconduct, a new trial is warranted." Id. at eleventh consecutive page. Claim Nine alleges that "the state was precluded from seeking restitution because, by statute, the request must have been made on the date of sentencing." Id. at twelfth consecutive page.

Claims One, Four, Five, Eight, and Nine do not assert violations of the Constitution or federal law. Id. Federal habeas corpus relief is limited to alleged violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d). Therefore, Claims One, Four, Five, Eight, and Nine are not appropriate for habeas review.[1]

## B. Claims Two and Seven

Claim Two asserts that the trial court erred in finding that the petitioner waived his

---

[1]I note that the petitioner did not present these claims to the state courts as a violation of the Constitution or federal law, *Answer*, Exhibit A and Exhibit D, and the state appellate court did not analyze them under any constitutional or federal standard. Id. at Exhibit C.

physician-patient privilege and in admitting into evidence statements he made to his physician. *Application*, ninth consecutive page.  The claim mentions the Sixth, Fifth, and Fourteenth Amendments.  Id.  Construing the Application liberally, Claim Two appears to assert violations of the petitioner's Sixth, Fifth, and Fourteenth Amendment rights.

However, when presenting Claim Two to the state appellate court, the petitioner did not did not attempt to apply the facts of the claim to *any* federal or constitutional standard.  *Answer*, Exhibit A, pp. 5-10.  To the contrary, he acknowledged that the privilege is statutory and that the statute was not enacted to protect any constitutional rights.  Id. at p. 5  Importantly, the Colorado Court of Appeals did not analyze the claim under any constitutional or federal standard; instead, the analysis was limited to whether the trial court abused its discretion.  Id. at Exhibit C, pp. 8-10.

Claim Seven alleges that the trial court erred in denying the petitioner's motion for a brief continuance, and that the trial court's denial of his motion constituted a violation of his Sixth Amendment right to a fair trial.  Id. at eleventh consecutive page.  When presenting this claim to the state courts, the petitioner did not allege a violation of his federal or constitutional rights. *Application*, Exhibit A, pp. 21-22; Exhibit D, twenty-first through twenty-third consecutive pages.  The state appellate court did not address the claim under any federal or constitutional standard.  Id. at Exhibit C, pp. 14-17.

Comity is the rationale underlying the exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  In order to "encourage state prisoners to seek full relief first from the state courts," the exhaustion requirement must be

"rigorously enforced."  Id.  Exhaustion of state remedies requires that a petitioner raise in the state courts both the factual and legal premises of his habeas claims.  Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986).  Consequently:

> It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based.  The claim must be substantially equivalent to that litigated in the state court.  Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3rd Cir. 1987) (quotations and citations omitted).

The petitioner's allegations and supporting evidence did not offer the Colorado Court of Appeals a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim[s]."  See Thomas v. Gibson, No. 99-5030, 2000 WL 986587 at *13 (10th Cir. July 18, 2000).  Because the substance of the petitioner's federal arguments under Claims Two and Seven were not fairly presented to the state court, see Picard, 404 U.S. at 278, these claims have not been exhausted.

When a petitioner fails to exhaust available state remedies, the federal court must determine whether the petitioner would be able to raise the claims in the state court.  Demarest, 130 F.3d at 939.  If the claims would be procedurally barred in the state court, the claims are procedurally defaulted for purposes of habeas relief.  Coleman, 501 U.S. at 735 n.1.

These claims are procedurally barred from state court consideration because a determination of an issue on direct appeal precludes review of that same issue on a motion for post-conviction relief.  Colo. R. Crim. P. 35(c); DePineda v. Price, 915 P.2d 1278, 1281 (Colo. 1996).  Because the petitioner presented these issues on direct appeal (as claims based on state law), he is prohibited from asserting them again (as claims based on constitutional law).

8

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993). The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Consequently, Claim Two and Seven are not proper for consideration on an application for writ of habeas corpus.

### C.  Claim Three

Claim Three alleges that in violation of his due process rights, the trial court erred in denying the petitioner's motion to suppress statements that were made to the police without the benefit of a Miranda warning. *Application*, ninth consecutive page. The plaintiff presented this claim to the state courts as a violation of his Fifth Amendment rights. *Answer*, Exhibit A, pp. 10-14; Exhibit D, eleventh through fifteenth consecutive pages. Therefore, this claim is exhausted.

The Application can be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d).

The applicable federal law on this issue is clearly established.  In <u>Miranda</u>, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

<u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

When determining whether a defendant is in custody for purposes of <u>Miranda</u>, the court must consider all of the relevant facts.  However, the ultimate inquiry is whether a reasonable person in that position would believe that his "freedom of action had been curtailed to a 'degree associated with formal arrest.' "  <u>United States v. Griffin</u>, 7 F.3d 1512, 1518 (10th Cir.1993) (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) and <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984)).

> There are three categories of police/citizen encounters.  The first is characterized by the voluntary cooperation of a citizen in response to noncoercive questioning. The second is a <u>Terry</u> stop.  This is usually characterized as a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.  To justify a <u>Terry</u> stop, the police officer need have only specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.  The third category is an arrest usually characterized by highly intrusive or lengthy search or detention.  Case law is well established that a defendant is not in custody under either of the first two encounters and therefore <u>Miranda</u> warnings need not usually be given.

<u>United States v. Griffin</u>. 7 F.3d 1512, 1516 (10th Cir. 1993) (internal citations omitted).

10

A <u>Terry</u> stop and inquiry must be "reasonably related in scope to the justification for their initiation.  Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." <u>Berkemer</u>, 468 U.S. at 439 (internal quotations and citations omitted).  The court determines the existence of a reasonable suspicion based on the totality of the circumstances.  <u>Griffin</u>, 7 F.3d at 1517.  Reasonable suspicion requires only a minimal level of objective justification which the officer can articulate.  <u>Id.</u>

The appellate court addressed the petitioner's <u>Miranda</u> claim as follows:

> Defendant next contends that the trial court erred in refusing to suppress statements that he made prior to his formal arrest and without an advisement complying with <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  We disagree.

> After the accident, a deputy located defendant inside the bar to which he had been heading and requested that he accompany the deputy outside.  As they walked outside, defendant was asked whether he had anything to drink in the bar, and he said he had not.  Once outside, he was asked to remain in front of the bar.  Defendant substantially complied with that request, but he began pacing.  He was then instructed to remain still.  No further conversation took place at that time.

> When another deputy arrived, defendant was asked to move to the front of a fire truck.  A third deputy watched defendant to assure that he remained there, but no further conversation took place.

> Finally, a state trooper arrived and told defendant that he was investigating the accident.  Defendant described what he had done before the collision and said that he had three beers before the accident.  Defendant then agreed to participate in a roadside sobriety test, which he performed poorly.  Defendant accompanied the deputy to his patrol car to write a statement about the accident and to submit to a portable breathalyzer test.  After he complied with these requests, he was placed under arrest, handcuffed, and because he may have been injured in the collision, driven to the

hospital.  On the way to the hospital, he was not questioned, although he volunteered several statements.  About an hour after his arrival at the hospital, defendant was advised of his Miranda rights.

The trial court concluded that defendant was not in custody for purposes of Miranda until the investigating officer formally arrested him after he had described the accident and performed the roadside tests poorly.  The court determined that the officers' contact with defendant prior to his formal arrest was part of a reasonable investigation at the accident scene and that defendant was not in custody for purposes of Miranda.  The court further concluded that statements he made after his formal arrest and before he was advised of his Miranda rights were voluntary and not a result of any interrogation.

These findings respecting defendant's detention are entitled to deference and will not be disturbed if they are supported by sufficient evidence in the record.  The determination of custody for Miranda purposes, however, is a mixed question of fact and law, and the trial court's application of legal standards to the facts is subject to de novo appellate review.

The Miranda criteria for suppressing a statement made without an advisement are two: the suspect must be in custody, and the statement must be the product of police interrogation.

A defendant is in custody for Miranda purposes only if he or she is formally arrested or, based on the totality of the circumstances, a reasonable person in the defendant's position would feel that his or her freedom of action has been curtailed to a degree associated with a formal arrest.  Thus, a person subject to an investigatory stop is not necessarily in custody for purposes of Miranda.

Factors to be considered to determine whether a suspect is in custody include:

> [t]he time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officers [sic] tone of voice and general demeanor; the length or mood of the interrogation; whether any limitation of movement or other form of restraint was placed

12

on the defendant during the interrogation; the officer's response to any questions asked by the defendant; and the defendant's verbal or nonverbal response to such directions.

Here, the officer conducted a reasonable investigation at the accident scene that did not amount to custody for purposes of Miranda. Reasonable persons, including defendant, who were involved in the accident would believe that they needed to stay at the accident scene to answer questions about the collision so that the police could conduct a complete investigation, not because they were under arrest.

In addition, the officers only temporarily detained defendant until they secured the accident scene and the investigatory officer arrived at the scene. There is no indication that the deputies' demeanor or tone would have led a reasonable person to believe that he was in custody.

Only when the officer placed defendant under formal arrest and handcuffed him was defendant in custody for purposes of Miranda. After the arrest and before the Miranda advisement, all defendant's statements were voluntarily made and not elicited in response to police interrogation.

Accordingly, the trial court properly admitted the challenged statements.

*Answer*, Exhibit C, pp. 4-8 (citations omitted).

I find that the appellate court's resolution of this claim was not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding. Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner does not provide any clear and convincing evidence to rebut the factual determinations made by the state court. Therefore, I find no basis upon which to grant the petitioner's Application with regard to this claim. 28 U.S.C. § 2254(d).

**4.   Claim Six**

Claim Six alleges that, as a result of threats from law enforcement, the petitioner's due process right to testify was impermissibly chilled.  *Application*, tenth consecutive page.  The plaintiff presented this claim to the state courts as a violation of his due process rights.  *Answer*, Exhibit A, pp. 18-20; Exhibit D, nineteenth through twenty-first consecutive pages.  Therefore, this claim is exhausted, and the Application can be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Claim Six and the facts surrounding it are described by the Colorado Court of Appeals as follows:

> Defendant contends that this right to testify was impermissibly chilled by threats made by law enforcement officers prior to trial. We disagree.
>
> When the trial court advised him of his right to testify, defendant alleged that, while incarcerated at the Douglas County jail, law enforcement officers threatened him and warned that, if he chose to testify, his family would be harmed.  The trial court conducted an evidentiary hearing on these allegations.  Defendant reiterated his allegations, and several officers testified and denied that any threats had been made against defendant.
>
> The trial court found that one of the alleged threats was, in fact, made immediately after the collision.  It concluded, however, that, while the officer's conduct was inappropriate, the incident occurred months earlier, and defendant should have brought it to the court's attention shortly after it occurred.  The court found that a second, more serious threat never occurred.  It concluded that

14

defendant had not been threatened in the manner in which he alleged.

Nevertheless, the court told defendant that, if he chose to testify, the court would instruct the sheriff to move defendant to another location and to provide him with security. Defendant elected not to testify.

The issue, therefore, is whether defendant voluntarily, knowingly, and intelligently waived his constitutional right to testify. We affirm the trial court's determination that defendant made a valid waiver of that right.

A defendant in a criminal case has a constitutional right to testify in his or her own defense. Thus, any waiver of the right to testify must be voluntary, knowing, and intelligent.

To ensure a valid waiver, the trial court should advise the defendant, outside the presence of the jury, of his or her right either to testify or not to do so.

In determining the validity of the waiver, courts indulge every reasonable presumption against waiver. If the trial court, applying the correct standards, makes findings necessary to establish an effective waiver of the right to testify and there is evidence to support these findings, they will not be disturbed on review.

Defendant's allegations about the incidents, if true, might be inconsistent with a valid waiver, but the trial court rejected his serious allegations. It also offered to move him to another jail and to provide him with security.

The trial court's determination that defendant effectively waived his right to testify is supported by competent evidence, and we will not disturb it.

*Answer*, Exhibit C, pp. 12-14 (citations omitted). The appellate court's factual determinations are

presumed correct because the petitioner does not rebut them by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

15

Under federal law, absent any showing that the defendant actually made a decision to testify and that he was subsequently deprived of the opportunity to testify, there is "no constitutional or federal mandate to inquire further into a defendant's decision not to testify." United States v. Janoe, 720 F.2d 1156, 1161 (10th Cir. 1983).  See also United States v. Leggett, 162 F.3d 237, 246 (3rd Cir. 1998) (citing Janoe as one of the majority of appellate courts to agree that "a trial court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily").

Here, to the extent the petitioner alleges that he made a decision to testify and that the officer's threats deprived of that opportunity, the trial court "determined that the threats were too far removed in time from any court dates in which Mr. Sanchez would have testified.  Ultimately the court found that the threats were not credible."  *Answer*, Exhibit A, p. 20.  In addition, the trial court offered to have the petitioner moved to another location and provide him with security if he elected to testify.  The petitioner elected not to testify.  There is no evidence that the petitioner subsequently made a decision to testify and was prevented from doing so.  Thus, the appellate court's decision that there was no violation of the petitioner's constitutional right to testify was not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding.

## IV.  CONCLUSION

For these reasons, I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo*

review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474

U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  <u>In

re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections

to this recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73

F.3d 1057, 1060 (10th Cir. 1996).

     Dated April 3, 2006.

                      BY THE COURT:

                       s/ Boyd N. Boland
                      United States Magistrate Judge